IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CR-321-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| BONDURANT AKEEM RUFFIN, | ) | |

This matter is before the court on defendant's motion to suppress certain evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution. (DE 51). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge Robert T. Numbers, II, issued memorandum and recommendation ("M&R"), wherein it is recommended that the court deny defendant's motion. (DE 69). Defendant timely filed objections to the M&R. (DE 76). The government responded on February 27, 2018. (DE 77). For the reasons that follow, the court adopts the recommendation of the magistrate judge as its own, and denies defendant's motion.

## STATEMENT OF THE CASE

On December 21, 2016, the grand jury returned a one count indictment, charging defendant with intent to distribute 500 grams or more of cocaine and 28 grams or more of cocaine base ("crack"), on or about November 24, 2016. On July 21, 2017, defendant filed the instant motion to suppress evidence seized in the course of his arrest on November 24, 2016, which incident began when officers Brandon Ochoa ("Ochoa") and Jesse Emory ("Emory"), along with Emory's dog Jaxx, responded to a 911 call reporting the break-in of a vehicle located in Wilson, North Carolina.

Evidentiary hearings were held before the magistrate judge on September 26, 2017, and October 2, 2017, at which hearing the court received testimony from Ochoa and Emory, the officers who found, detained, and arrested defendant in the vicinity of the break-in.

In objections to the M&R, defendant maintains that officers did not have reasonable suspicion to detain him nor probable cause to arrest him in violation of his Fourth Amendment rights and, more specifically, that the magistrate judge incorrectly found 1) reasonable for officers to handcuff defendant during a consensual encounter and 2) defendant's arrest lawful because he was trespassing.

## STATEMENT OF THE FACTS

The court incorporates herein statement of facts in section I of the M&R, as relevant to the instant motion, where such statement accurately reflects the evidence of record:

On November 24, 2016, at 1:02 a.m., Officer Brandon Ochoa responded to a 911 call reporting a vehicle break-in in Wilson, North Carolina. See Tr. of Sept. 26, 2017 Suppression Hr'g Vol. 1 at 4:16–22; 5:10–16, 20–23, D.E. 68. After arriving, Ochoa learned from the victim that her cell phone was missing and several items from inside her vehicle were now in the grass on the side of her apartment. Id. at 6:2–6.

Shortly thereafter, Officer Jesse Emory also arrived at the scene with his dog Jaxx.[1] Id. at 6:7–10; 60:24–61:1. Emory and Jaxx are certified to perform a number of law enforcement functions, including tracking suspects or missing items. Id. at 60:1–61:12. Emory placed Jaxx in a tracking harness and allowed the dog to begin searching. Id. at 65:11–18. As this was going on, other officers set up a perimeter around the area. Id. at 6:18–23; 51:7–13. Jaxx led Ochoa and Emory behind the victim's apartment, through the woods, and into the open backyard in an adjacent residential neighborhood. Id. at 7:8–12, 24–8:1–3; 25:1–4. There, at around 1:42 a.m., Ochoa saw a person who he later learned to be Bondurant Ruffin stooped down under a porch. Id. at 8:9–12; 51:23–52:1. Ruffin put his hands into the pockets of his hooded sweatshirt as he stood up. Id. at 8:11–12; 10:4–5.

Ochoa, who was about twenty feet away, noticed some items located "directly in front of [Ruffin]" underneath the porch.[2] Id. at 8:12–14; 9:11–13; 10:13–19. Emory, who was standing several feet to the left of Ochoa, also saw a white bag under the porch. Id. at 68:22–24; 83:2–11; 84:25–85:3. Both officers believed that it contained

---

[1] The transcript refers to the dog as Jacks, but the training certificates offered by the Government demonstrate that the dog's name is actually spelled Jaxx. Gov. Ex. 7.

[2] Ochoa testified that the items were one foot away from Ruffin, (D.E. 68 at 9:14–16), while Emory testified that the items were five feet away from Ruffin, (id. at 68:15–18).

the stolen cell phone from the vehicle breakin. Id. at 30:13–21; 68:20–24; 70:4–9. They shined their flashlights on Ruffin and approached him. Id. at 10:5–6, 13–17, 22. Emory told Ruffin to remove his hands from his pockets and Ruffin complied. Id. at 10:22–24; 69:10–12. The interaction with Ruffin excited Emory's dog which began barking. Id. at 71:6–10; 84:11–15. Although Jaxx did not alert on Ruffin, Id. at 82:7–9, he was the only person the officers encountered during their search. Id. at 52:16–18.

While Emory controlled Jaxx, Ochoa questioned Ruffin. Id. at 10:22–25; 73:7–15. Throughout the encounter, Ruffin appeared nervous and evasive. Id. at 74:18. He avoided eye contact with the officers, continually looked towards the woods, and kept moving away from the items under the porch. Id. at 12:2–10; 31:3–4; 73:15; 74:18. Ochoa asked Ruffin why he was at that residence, and requested his name multiple times. Id. at 10:24–25. Ruffin failed to provide his name at first, instead saying repeatedly that his child was using the bathroom in the woods. Id. at 10:25–11:4. No child was ever located in the woods. Id. at 11:19–21.

Ruffin placed his hands back into his pocket two more times, and both times Ochoa told him to remove them. Id. at 11:4–6. Ochoa then asked Ruffin if he could check him for weapons, and Ruffin agreed. Id. at 11:6–8. Officer Ochoa found no weapons. Id. at 11:8–9.

After Ochoa checked Ruffin for weapons, Ruffin began taking steps away from the officers and continued looking into the woods behind him and to his left. Id. at 12:13–16. Worried that Ruffin was planning to flee and still believing him to be the vehicle break-in suspect, Emory urged Ochoa to "grab [Ruffin] before he takes off . . . ." Id. at 73:17–24.

Ochoa then told Ruffin that he was not free to leave and that he was being detained. Id. at 13:5–6. He grabbed Ruffin's arm to put him in handcuffs, but Ruffin straightened his arm and began pulling away and dragging Ochoa along with him. Id. at 13:5–9; 14:8–9, 14–16. In the five minute struggle that followed—during which Emory called other officers to respond—Ochoa continually ordered Ruffin to stop resisting, to no avail. Id. at 14:23–15:6; 38:8–14. He ended up restraining Ruffin against a nearby air conditioning unit and, eventually, pinned Ruffin to the ground. Id. at 14:24–15:8. A nearby officer helped handcuff Ruffin. Id. at 15:13–16. The officers then took Ruffin to a patrol car and performed a search incident to arrest where they uncovered a cell phone and approximately $2,000. Id. at 15:20–21; 37:17–21; Mot. to Suppress at 12.

While Ruffin was at the patrol car, another officer opened the bag under the porch and found a substantial amount of cocaine inside. See Tr. Vol. 2 at 75:24–76:9; Tr. Vol 1 4:22–5:14. Ochoa's sergeant then informed him that Ruffin would be arrested for a felony and instructed him to put leg restraints on Ruffin. Id. at 15:24. At that

point, Ochoa did not know what was in the bag under the porch or the crime for which Ruffin was being charged. Id. at 16:4–8. The officers then transported Ruffin to the Wilson Police Department and took him to the interview room. Id. at 16:20–25.

(M&R (DE 69) at 1-4).

## COURT'S DISCUSSION

A.    Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.    Analysis

The Fourth Amendment to the Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

First, law enforcement may lawfully detain a suspect if they possess "'a reasonable and articulable suspicion that the person seized is engaged in criminal activity.'" United States v. Black, 707 F.3d 531, 539 (4th Cir.2013) (quoting Reid v. Georgia, 448 U.S. 438, 440 (1980)). "In determining whether an officer had reasonable suspicion, we view the totality of the circumstances

4

to determine whether the officer had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" United States v. Griffin, 589 F.3d 148, 152 (4th Cir.2009) (quoting United States v. Cortez, 449 U.S. 411, 417–18 (1981)).

Second, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citations omitted).  Probable cause exists when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Michigan v. DeFillippo, 443 U.S. 31, 37 (1979); see Devenpeck, 543 U.S. at 152 ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.") (citation omitted).

Defendant argues first that the encounter at issue was consensual until Ochaoa "put hands on Defendant," and that "[t]he reason Ochoa put[] hands on Defendant was not because the officers uncovered some incriminating evidence, but because Emory felt that Defendant was going to exercise his constitutional right to terminate the consensual encounter."  (DE 76 at 2-3 ("Defendant made no attempt to flee, and a Terry frisk revealed no weapons or contraband.  He was ordered to stop moving towards the woods . . . and complied.  Defendant respectfully asks: What more was he supposed to do?")).  Defendant argues second that the use of handcuffs in this circumstance was unreasonable, where defendant was encountered over one-half a mile away from the scene of the crime more than 30 minutes after the 911 call.  (Id. at 2).

The magistrate judge correctly found the encounter between defendant and the officers was

consensual until the point where Ochoa told defendant he was no longer free to leave and reasonable suspicion justified defendant's temporary detention at that time, including the use of handcuffs. (M&R (DE 69) at 7-8). As noted by the magistrate judge, courts have identified a variety of factors that support a finding of reasonable suspicion, applicable to the present situation. See United States v. Bumpers, 705 F.3d 168, 176 (4th Cir. 2013) (suspicion of trespassing); United States v. Mayo, 361 F.3d 802, 806 (4th Cir. 2004) (evasive or nervous behavior); United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993) (lateness of the hour); United States v. McFarley, 991 F.2d 1188 (4th Cir. 1993) (inconsistent stories in response to an officer's question).

Here, officers, while searching for the breaking and entering suspect, encountered defendant at 1:42 a.m. Both officers testified they saw items or a white bag located underneath the porch near defendant. Both officers believed defendant was in possession of the stolen cell phone from the vehicle break in. During questioning, defendant appeared nervous and evasive, avoided eye contact, continually looked toward the woods, and kept moving away from the porch. Defendant did not respond to questions as to his name, which he was not required to do,[3] but did tell Ochoa repeatedly that his child was using the bathroom in the woods. Emory told Ochoa to "grab" defendant, which Ochoa did, attempting to handcuff defendant, to which defendant resisted for approximately five minutes before officers were able to handcuff him.[4]

Defendant is correct that he was compliant with the officers requests up to the point of Ochoa

---

[3] As noted by the magistrate judge, North Carolina does not have a "stop and identify" statute. (M&R (DE 69) at 9).

[4] Defendant argues that because Emory and not Ochoa decided defendant needed to be handcuffed and because Emory testified he never heard defendant state that defendant's child was in the woods, the court should not consider the allegation that defendant mentioned his child. (DE 76 at 3). Because the court does not find this allegation dispositive in its analysis, it is unnecessary for the court to resolve this issue.

trying to handcuff him except for providing his name, and a "suspect's refusal to cooperate with police, without more, does not satisfy <u>Terry</u> stop requirements." <u>Mayo</u>, 361 F.3d at 806 (citing <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124 (2000). However, more was present in this situation given the time, the place, the presence of what officers reasonably believed was a concealed stolen item, and defendant's escalating unease, even though that unease could be attributed, as noted by the magistrate judge, to two officers approaching defendant in the middle of the night, shining flashlights on him, accompanied by a barking dog. Notwithstanding, the court's proper focus is on the officers and whether they "had a reasonable suspicion to believe that criminal activity was afoot." <u>Id.</u> at 807. Here, the officers did.

Additionally, the use of handcuffs in the context of this <u>Terry</u> stop was not unreasonable. Although defendant objects to the magistrate judge's reliance on <u>United States v. Crittendon</u>, 883 F.2d 326 (4th Cir. 1989) as being factually distinct from the present case, the Fourth Circuit has made clear that, although <u>Terry</u> stops should be minimally intrusive, officers conducting <u>Terry</u> stops may "use such reasonable force as may be necessary to" effectuate the stop, <u>United States v. Haye</u>, 825 F.2d 32, 35 (4th Cir. 1987), "to maintain the status quo[,] and to protect their safety," <u>United States v. Sinclair</u>, 983 F.2d 598, 602 (4th Cir. 1993) (holding that officer's decision to draw his weapon during a <u>Terry</u> stop was not improper even though the officer "had no reason to believe [the suspects] were armed and dangerous"); <u>see also</u> <u>Young v. Prince George's Cty.</u>, 355 F.3d 751, 755 (4th Cir. 2004) (citing prior cases, including <u>Crittendon</u>, upholding the use of handcuffs and drawing of weapons during <u>Terry</u> stops).

As this court has previously held, an officer may handcuff a suspect during a lawful <u>Terry</u> stop to prevent that suspect from escaping while the officer effectuates the investigatory purpose of

the stop. United States v. Manning, No. 5:07-CR-149-FL, 2007 WL 4208314, at *3 (E.D.N.C. Nov. 26, 2007) (police officer had reasonable suspicion to support a lawful Terry stop, where suspect provided false identity and exhibited "outward physical signs of panic," which thereafter "authorized his decision to handcuff defendant," while ascertaining his identity); Crittendon, 883 F.2d at 329 ("Here, Geary could reasonably anticipate that he might be required to go to the aid of his fellow officers and that Ragib, like Green, might then attempt to flee"); see also United States v. Lesane, 498 F. App'x 363, 366 (4th Cir. 2012) ("Moreover, as to the duration of Lesane's initial detention, the five-minute period during which he was handcuffed before his attempted flight was clearly not longer than necessary for the officers to confirm or dispel their suspicion that Lesane might be involved in the distribution of narcotics"); United States v. Hamerter, 91 F. App'x 261, 263 (4th Cir. 2004) ("Hamerter was not illegally arrested when the trooper handcuffed him after seeing the first duffel bag").

Finally, the court addresses defendant's argument that the magistrate judge based his decision on an unsupported allegation that the officers had probable cause to believe that the defendant was trespassing at the time of the consensual encounter. (DE 76 at 3). This is an inaccurate summary of the M&R. The magistrate judge's recommendation states that the facts of the encounter with defendant "supply the reasonable suspicion which justified Ruffin's temporary detention." (M&R (DE 69) at 9). Thereafter, when defendant fought back against officers lawfully discharging their duties (to handcuff the defendant temporarily), probable cause existed "to arrest Ruffin on charges of resisting a public officer." (Id. at 9).

Although the magistrate judge references trespassing, (id. at 3-4), the magistrate judge stated that defendant failing to identify his connection to a house he was found depositing a bag

underneath, and claiming his child was using the restroom in the woods, "belies the notion that he lived at the residence – all facts which support a reasonable belief that he was trespassing like in Bumpers." (Id. at 9 (citing Bumpers, 705 F.3d 168)). The magistrate judge was not claiming that the "Defendant was properly arrested under a theory of trespass," as argued by the defendant. (DE 76 at 4). Instead, the magistrate judge stated that the facts of the encounter, "together with the lateness of the hour, supply the reasonable suspicion which justified Ruffin's temporary detention." (M&R (DE 69) at 9).[5]

## CONCLUSION

Based on the foregoing, upon careful review of the M&R and the record, the court ADOPTS the recommendation of the magistrate judge as its own. Defendant's motion to suppress (DE 51) is DENIED.

SO ORDERED, this the 16th day of April, 2018.


LOUISE W. FLANAGAN
United States District Judge

---

[5] Defendant in his motion to suppress additionally argued that statements he made after he was arrested were obtained in violation of his Fifth Amendment rights. The magistrate judge found these statements were not obtained in violation of defendant's Fifth Amendment rights and therefore recommends defendant's motion to suppress statements be denied and his motion to suppress regarding statements made after his invocation of his right to counsel be denied as moot. At the evidentiary hearing, defendant indicated to the magistrate judge that defendant may no longer be pursing this argument, (see DE 67 at 53:24-25), and defendant does not address these findings in his objections to the M&R. Having carefully reviewed the filings in this case, the M&R, and the relevant case law, the court agrees with the conclusions reached by the magistrate judge as to defendant's Fifth Amendment claims. Finding no clear error, the court adopts the recommendations of the magistrate judge as to this issue.